### LEWIS *et al.* v. HOJER.

*(Common Pleas of New York City and County, General Term.* December 7, 1891.)

NEGOTIABLE INSTRUMENTS—ACTION ON DRAFT—RIGHTS OF ACCEPTOR.

    Defendant accepted a draft in consideration of an agreement by the drawer that on acceptance he would "at once" ship to defendant a quantity of cigars of sufficient value to secure the draft, and in further consideration of an agreement by the payee of the draft, who held the same as collateral security for an indebtedness of the drawer, and who also held an assignment of the drawer's stock of cigars as a further security that he (payee) would release a sufficient quantity of the cigars to enable the drawer to comply with his agreement to ship the same to defendant (drawee) as security for the acceptance. *Held*, in an action on the acceptance, that the refusal of the court to charge that a certain delay of the payee (plaintiff) in releasing the cigars and causing shipment thereof to defendant was not unreasonable was without prejudice; the question whether the delay was unreasonable being not germane to the case by reason of the fact that defendant was entitled to a shipment of the cigars "at once" on acceptance of the draft.

Appeal from trial term.

Action by George Lewis and another against George W. Hojer to recover the amount of a draft accepted by defendant. From a judgment entered on the verdict of a jury, and from an order denying a motion for a new trial, plaintiffs appeal. Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Townsend, Dyett & Einstein*, (*A. R. Dyett*, of counsel,) for appellants. *Rufus F. Andrews*, (*Herbert F. Andrews*, of counsel,) for respondent.

BISCHOFF, J. Wilt & De Milt, manufacturers of cigars, of Tallahassee, Fla., being at the time indebted to plaintiffs, who were engaged in business as bankers at the same place under the firm name of B. C. Lewis & Sons, on January 31, 1884, made their draft on the defendant, of the city of New York, as drawee, payable 90 days after date, and delivered it to plaintiffs, upon the understanding that when accepted by the defendant the draft should be applied in extinguishment of the drawers' existing indebtedness. Defendant at the time was not indebted to, nor did he hold any funds belonging to, the drawers, and to induce him to accept the draft, H. J. Wilt, one of the drawers, on February 1st wrote him as follows: "We made the draft on you yesterday at 90 days for $4,000, as previously advised, which we trust you will do us the favor to accept. We now have to offer the following propositions as a means of enabling us to run our factory until matters get straightened out. We will ship you at once, say 45,000 cigars, value, say $3,500, to go to cover your acceptance above, and each week will ship you, say 10,000 cigars, value from $500 to $700, against which we would want to draw, say 90 days, for $200 to $300, to cover our current expenses; you to accept such weekly shipments to pay any deficiency on your $4,000 acceptance. After this is settled, you to render an account monthly, and remit proceeds by certified check or certificate of deposit on N. Y. bank to us at this place. If this receives your approval, please advise us at once, and oblige, yours, etc., H. J. WILT, for WILT & DE MILT." This letter was received by defendant, and, with knowledge of its contents, he, on February 6th, accepted the draft when it was presented to him by the Importers' & Traders' Bank of New York, to whom it had been forwarded by the plaintiffs for acceptance and

collection. The cigars were not shipped to defendant at any time, and on February 25th he notified the Importers' & Traders' Bank in writing to the effect that because of the failure to make the promised shipment up to that time he would refuse to pay the draft at maturity. The draft having matured, this action was brought to enforce defendant's liability as acceptor. For his defense he asserted that at the time of the making and delivery of the draft the payees had the custody or control of the drawers' merchandise stock under a bill of sale or assignment to them as collateral security for a then existing indebtedness, and that the payees promised, in consideration of defendant's acceptance of the draft, to release a sufficient quantity of cigars from the operation of such bill of sale or assignment to enable the drawers to comply with the terms of Wilt's letter of February 1st to the defendant, but that, after such acceptance was made, the payees refused to abide by their promise, whereby the drawers were prevented from making the promised shipment, and the defendant failed to receive the means of reimbursement as agreed. The holding of a bill of sale or assignment of the effect mentioned, and the making of the promise to release the cigars for the purposes of shipment to defendant, as well as any knowledge on their part that the shipment of the cigars constituted the consideration for defendant's acceptance, were denied by plaintiffs; but the defendant supported his assertions by sufficient evidence. No objection was made to the competency of the evidence, and upon careful examination of the record before us we are not inclined to say that the evidence introduced to substantiate the plaintiffs' denials so preponderates that a verdict for the defendant is necessarily against the weight of the evidence. The motion for a new trial upon that ground was therefore properly denied.

Upon the trial, plaintiffs, among other things, claimed that, assuming that they had promised to release and ship the cigars in consideration of defendant's acceptance of Wilt & De Milt's draft, and that the jury would so find, they were entitled to a reasonable time within which to cause the shipment to be made; that it appeared in evidence without contradiction that the ordinary time required for the carriage of freight from Tallahassee to New York was from ten days to two weeks, and that because of this fact the delay from February 6th to 25th was not unreasonable, and that the defendant's notice of February 25th that he would not pay the draft at maturity relieved plaintiffs from the duty of shipment or tender of shipment thereafter. Consistently with these claims, plaintiffs' counsel requested the court to charge that plaintiffs were entitled to a reasonable time for the purposes of such shipment, and that under the evidence the delay from February 6th to 25th was as matter of law not unreasonable. The court did charge that shipment of the cigars within a reasonable time would have been a sufficient compliance with the contract of acceptance of Wilt & De Milt's draft, but declined to say as matter of law that the delay mentioned was not unreasonable, submitting, however, the question of unreasonablenes of the delay to the jury, to be determined by them as one of fact. To this refusal to charge and submission counsel duly excepted, and these exceptions present the principal and only remaining grounds urged by appellants for reversal. The brief of the able counsel for appellants is almost exclusively devoted to the discussion of these alleged errors, but a proper consideration of the evidence will be convincing that the question whether or not the delay was unreasonable was not germane to the case, and that any instruction to the jury concerning it was wholly irrelevant. No error can be predicated on the refusal of the court to charge concerning an irrelevant proposition, and for that reason appellants' exception to the court's refusal to charge that the delay was not as matter of law unreasonable is without merit. *Kissenger* v. *Railroad Co.*, 56 N. Y. 538. The point was not raised by counsel for the respondent, but the consideration of alleged errors urged in behalf of a new trial requires the appellate court to inquire

whether, assuming the alleged errors complained of to be such, they were prejudicial to the appellants, and might have influenced the result of the trial to their injury; and if, upon such inquiry, it should appear that such was not the effect of the alleged errors, and if it still more appears that the appellants received the only advantage to be gained therefrom, the errors will not present ground for reversal. *Shorter* v. *People*, 2 N. Y. 193; *Tracey* v. *Altmyer*, 46 N. Y. 598, 604; *Appleby* v. *Bank*, 62 N. Y. 12, 18; *Carman* v. *Pultz*, 21 N. Y. 547; *Briant* v. *Trimmer*, 47 N. Y. 96; *Priebe* v. *Bridge Co.*, 77 N. Y. 597; *Jones* v. *Insurance Co.*, 61 N. Y. 87; *Moody* v. *Osgood*, 54 N. Y. 488, 494; Thomp. Char. Jur. § 121, and cases there collated. Subjecting the alleged errors urged by appellants to the test stated, it will be apparent that plaintiffs were not entitled upon the evidence to a determination, either as matter of law or of fact, that the delay in shipment of cigars from February 6th to the 25th was not, under the special circumstances of the case, an unreasonable one, and that, when the trial judge did submit that question to the jury as one of fact, the error, if such it was, was prejudicial to the defendant only, and operated most advantageously to the plaintiffs, since it allowed the latter a greater time for the shipment of the cigars than had been agreed upon, and was, therefore, more favorable to the plaintiffs than the evidence warranted. To ascertain the manner in which and the time when the cigars were to be shipped, we must turn to the letter of Wilt to defendant on February 1st, no other evidence of these matters appearing in the case. That letter plainly and unequivocally stated that in consideration of defendant's acceptance of the draft the cigars would be shipped "at once." This did not mean that they would be shipped within a reasonable time, but that the shipment would be made with greater celerity than is ordinarily comprehended by a reasonable time. It implied that the latter would be made simultaneously with the acceptance, or at least with receipt of advice that the draft had been accepted. "At once" is convertible with "prompt," "forthwith." These terms, in their ordinary acceptation, mean "at the same point of time, immediately, without delay, at one and the same time, simultaneously, directly," (Webst. Int. Dict. "Once," p. 1002, "Forthwith," p. 588, "Prompt," p. 1147,) and are not wholly without judicial definition. In *Tobias* v. *Lissberger*, 105 N. Y. 410, 12 N. E. Rep. 13, the court of appeals says that a contract for "prompt" shipment was not performed by a shipment within a reasonable time, but that the shipper was thereby bound to ship with greater dispatch than in a reasonable time. So in *Woods* v. *Miller*, (Iowa,) 7 N. W. Rep. 484, the words, "will fill your order immediately," in a contract for the shipment of potatoes, were held to imply readiness to ship, and evidence to show that the potatoes had been shipped within a reasonable time was pronounced inadmissible. *Duncan* v. *Topham*, 8 C. B. 225, is authority that a promise to ship "directly" was not performed by shipment within a reasonable time, and that reasonable time meant a more protracted delay than the parties intended by the use of the word "directly." For the reasons above expressed we cannot regard the errors complained of, if such they are, as fatal to the judgment and order from which the appeal was taken. Judgment and order affirmed, with costs to respondent. All concur.